John S. FURST, Independent Executor of the Estate of Bette C. Graham,

v.

The UNITED STATES.

No. 415–80T.

United States Court of Claims.

April 21, 1982.

Ronald M. Mankoff, Dallas, Tex., attorney of record, for plaintiff. Thomas G. Hineman and Durant, Mankoff, Davis, Wolens & Francis, Dallas, Tex., of counsel.

Robert N. Dorosin, Washington, D. C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KASHIWA, Judge.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This federal income tax refund suit comes before the court on cross motions for summary judgment. Two major issues are raised by this case. The first is whether decedent gave the Internal Revenue Service sufficient information to constitute a timely informal refund claim. The second is whether collateral estoppel bars the Government from relitigating the merits of the substantive tax issues involved in this suit. After careful consideration of the parties' submissions and after oral argument, we grant the plaintiff's motion for summary judgment.

During the 1950's Bette C. Graham, the decedent, invented and developed a secret formula for a correction fluid called "Liquid Paper." She and her husband formed the Liquid Paper Corporation (LPC) in 1965. The Liquid Paper secret formula, however, was not transferred to the corporation upon its formation. Instead, decedent made a separate agreement with the corporation on January 30, 1970. At that time she transferred and assigned the secret formula with the exclusive right to make, mix, blend, manufacture, and sell the Liquid Paper correction fluid products to LPC for 5 percent of the gross proceeds received yearly from the sale of the Liquid Paper products. At the time of the transfer, decedent owned 49.5 percent and her husband 40.5 percent of the LPC stock.

Decedent and her husband filed joint federal income tax returns for the years 1970 through 1974. On these returns the royalties received each year from LPC were treated as long-term capital gain. The Internal Revenue Service (IRS) audited the returns for the years 1972 through 1974 and contested the Grahams' treatment of the royalties as long-term capital gain. On May 19, 1976, the District Director of the Internal Revenue Service, Dallas, Texas, submitted a 30-day letter proposing income tax deficiencies for the years 1972 through 1974 based upon the treatment of the royalty payments. The IRS took the position that the royalty payments were reportable as ordinary income under 26 U.S.C. (Internal Revenue Code of 1954 as amended) § 1239 [1] (subsequent section references are to the Internal Revenue Code). In the al-

---

1. In the relevant years of 1972 through 1974, section 1239 provided:

"§ 1239. *Gain from sale of certain property between spouses or between an individual and a controlled corporation*

"(a) *Treatment of gain as ordinary income.*—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

"(1) between a husband and wife; or

"(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

"(b) *Section applicable only to sales or exchanges of depreciable property.*—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

"(c) *Section not applicable with respect to sales or exchanges made on or before May 3, 1951.*—This section shall apply only in the case of a sale or exchange made after May 3, 1951. Aug. 16, 1954, c. 736, 68A Stat. 332; Sept. 2, 1958, Pub.L. 85–866, Title I, § 56, 72 Stat. 1645."

It has subsequently been amended by Pub.L. 94–455, Title XXI, § 2129 effective Oct. 4, 1976; Pub.L. 95–600, Title VII, § 701(v), effective Nov. 6, 1978; and Pub.L. 96–471, § 5 effective Oct. 19, 1980.

ternative, it proposed that if the payments were properly treated by the Grahams as long-term capital gain, a portion of these royalties represented interest income under the imputed interest provisions of section 483.

Decedent and her former husband [2] filed a protest letter with the District Director to the proposed deficiencies for the years 1972, 1973, and 1974. The protest referred specifically to all 3 years at issue and elaborated the reasons for objection to the proposed income tax deficiencies.

On May 13, 1977, the IRS sent a statutory notice of deficiency to the decedent and her ex-husband for the following years and amounts:

| Year | Amount |
|------|--------|
| 1972 | $ 78,095.45 |
| 1973 | 134,277.55 |
| 1974 | 155,993.97 |

The decedent, with respect to the year 1972 only, submitted and executed a Form 870 waiver of restrictions of assessment and paid the deficiency and interest of $21,-661.37 for 1972. She also filed a claim for refund on Form 1040X for the year 1972. Decedent's claim for refund was rejected by the IRS on June 22, 1977. Thereafter, decedent filed suit on July 8, 1977, in the United States District Court for the Northern District of Texas for refund of the $78,095.45 in tax and $21,661.37 in assessed interest paid for the year 1972.

The Commissioner of Internal Revenue (Commissioner), on September 8, 1977, assessed against the decedent a federal income tax deficiency of $134,277.55 with interest of $31,897.16 for 1973 and a tax deficiency of $155,993.97 with interest of $27,-696.18 for 1974. Decedent paid the required amounts by check dated September 19, 1977, and received by the IRS on September 21, 1977.

Decedent through her attorney in a letter dated November 2, 1977, requested the IRS to place in suspense its pending audit for the years 1975 and 1976 until the resolution of the pending district court litigation involving the same issues. This request was granted by the IRS. Decedent then filed an amended claim for refund with the IRS for the year 1972 on June 28, 1978. Although the Form 1040X filed was formally for the year 1972, it also referred to the years 1973 and 1974.

On its income tax returns for the years in question, LPC took deductions for its royalty payments to the Grahams. The IRS did not agree these deductions were proper and assessed a tax deficiency which was duly paid by LPC. LPC, in early 1978, filed a claim for refund which was rejected by the Government. A petition in interpleader and for injunctive relief was then filed by the United States on July 21, 1978, in decedent's case pending before the district court. The petition named the decedent and LPC as defendants, requested LPC be interpleaded in the pending action, and asked the court to resolve the conflicting claims of decedent and LPC. The decedent and LPC opposed the petition.

On March 7, 1979, the district court held the secret formula was not depreciable, section 1239 was inapplicable, and the royalty payments were therefore properly treated as long-term capital gain by the decedent. Decedent's suit for refund for the year 1972 was granted. The court also granted the motions of the decedent and LPC to dismiss the interpleader action. *Graham v. United States*, 79–1 U.S.T.C. ¶ 9274 (N.D.Tex.1979).

Meanwhile, decedent's former husband, Robert Graham, had filed suit against the Government in the Tax Court in response to the statutory notice of deficiency for the years 1972, 1973, and 1974 and a separate statutory notice for 1975. The lawsuit concerned all 4 years. The Tax Court found in Graham's favor and based its decision upon the doctrine of collateral estoppel. It said the Government was barred from relitigating the issues already decided by the district court in decedent's case. *Graham v. Commissioner*, 76 T.C. 853 (1981).

On September 28, 1979, decedent filed formal claims for refund with the IRS on Form 1040X for the years 1973 and 1974. Amended claims were subsequently filed.

---

2. Bette C. Graham and her husband, Robert M. Graham, were divorced on July 29, 1975.

Decedent died on May 12, 1980. Plaintiff, John S. Furst as executor of decedent's estate, has filed suit in this court for refund of taxes paid for the years 1973 and 1974. LPC has also brought a federal income tax refund suit in this court, Ct.Cl. No. 292–79T. Its case is for the fiscal years ending April 30, 1973, through April 30, 1975, and is not now before us.

## I

■ Before a tax refund suit may be maintained in any court, a claim for refund must be filed with the Commissioner. Section 7422(a).[3] The refund claim must be filed by the taxpayer within 3 years from the time the return was first filed or within 2 years from the time the tax was paid, whichever is later. Section 6511(a).[4] The decedent first filed formal claims for refund for 1973 and 1974 on a Form 1040X on September 28, 1979, a date subsequent to the expiration of both the 2- and 3-year periods.[5] Thus the decedent did not file a timely *formal* refund claim. It has long been recognized, however, that a formal claim for refund is not needed; all that is required is a timely informal claim. *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). Such informal notice serves the same function as a formal refund claim, "to put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax * * *." *Newton v. United States*, 143 Ct.Cl. 293, 299, 163 F.Supp. 614, 618 (1958). This enables the IRS, if it wishes, to begin an examination of the claim. *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963).

■ In general, the cases over the years have held there should be a written component to the informal claim for refund. *Disabled American Veterans v. United States*, 227 Ct.Cl. ——, ——, 650 F.2d 1178, 1180 (1981); *Rosengarten v. United States*, 149 Ct.Cl. 287, 294, 181 F.Supp. 275, 279, *cert. denied*, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960). This is in recognition of the fact Government personnel working on a case may change. *Wrightsman Petroleum Co. v. United States*, 92 Ct.Cl. 217, 238, 35 F.Supp. 86, 96 (1940), *cert. denied*, 313 U.S. 578, 61 S.Ct. 1095, 85 L.Ed. 1535 (1941). Such a written element helps to provide some continuity for the IRS. *Id.* The written component must be examined, however, in light of all the facts and circumstances. *United States v. Kales*, 314 U.S. at 194, 62 S.Ct. at 218; *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. at 114–115, 318 F.2d at 920–921. One written component alone need not provide the entire framework for the informal refund claim. It is all the facts and circumstances that will determine whether a timely informal claim for refund has been filed.

**3.** Section 7422(a) provides:

§ 7422. *Civil actions for refund*

"(a) *No suit prior to filing claim for refund.* —No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

**4.** Section 6511(a) provides:

"§ 6511. *Limitations on credit or refund.* "(a) *Period of limitation on filing claim.* —Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid."

**5.** Plaintiff claims the 2-year period should be measured from the date the decedent's bank paid the IRS. Defendant contends the 2-year period is measured from the date the check was received by the IRS. We need not reach this issue since both parties agree that whichever date is chosen the formal claim for refund was filed subsequent to the end of the 2-year period.

Only when the facts and circumstances demonstrate the Commissioner was on notice that a right was being asserted with respect to an overpayment of tax will we hold a timely informal claim was filed. We find, after a close examination of the facts in this case, that decedent made a timely informal claim for refund.

■ The first element of the claim for refund was the protest letter filed by the decedent and her former husband on August 5, 1976. This letter set out their objections to the proposed tax deficiencies for the years 1972, 1973, and 1974 and the grounds for their objections. The protest made clear that during all the years concerned the same issue was involved, whether the royalty payments were properly reported as long-term capital gain. The protest letter spent several pages discussing the law involved. Thus, this letter stated the objections to the proposed tax deficiencies and the reasons behind the objections and demonstrated the objections were equally applicable to all 3 years.

Subsequent to the initiation of decedent's refund suit in district court for 1972, decedent requested and was granted a suspension in the pending tax audits for the years 1975 and 1976. This request said:

> * * * [a suspension is requested] pending the outcome of the District Court litigation on the identical issue. That suit will * * * determine whether the royalties paid to Mrs. Graham from the Liquid Paper Corporation represent ordinary income or capital gain.

It is clear that all the parties recognized the method of reporting royalty payments was a continuing issue and that decedent's objections were also continuing. Decedent did not just object to the IRS treatment of the royalties in the one year, 1972; she objected to the IRS treatment in all subsequent years.

Decedent's formal amended claim for refund for 1972 also alerted the Commissioner to decedent's objections to the treatment of the royalty payments in 1973 and 1974. Although the Form 1040X itself spoke only of the year 1972, the statement attached to the 1040X incorporated the statutory notice of deficiency. This statutory notice of deficiency referred to all 3 years; it specified the years concerned and the amounts for each year. The attached statement to the Form 1040X said in pertinent part:

> A copy of the Statutory Notice of Deficiency is attached hereto as Exhibit "A" and *incorporated herein for all purposes.* * * * Therefore, the Internal Revenue Service erred in its determination, pursuant to Exhibit "A" attached hereto, that such payments received from Liquid Paper Corporation for the Formula constituted ordinary income. [Emphasis supplied.]

It is evident from the Government's petition in interpleader in decedent's district court suit that the IRS realized decedent objected to its treatment of the royalty payments for 1973 and 1974. Although decedent's suit was for only 1972, the interpleader petition spoke of all 3 years. It said in pertinent part:

> 4. * * *
>
> Therefore, Bette C. Graham contends that she has overpaid her federal income taxes and assessed interest thereon in amounts and for years as follows:

| Year | Tax | Interest | Total |
|------|-----|----------|-------|
| 1972 | $ 78,095.45 | $21,661.37 | $ 99,756.82 |
| 1973 | 134,277.55 | 31,897.16 | 166,174.71 |
| 1974 | 155,993.97 | 27,696.18 | 183,690.15 |
|      | $368,366.97 | $81,254.71 | $449,621.68 |

> * * * * * *
>
> * * * Therefore, Liquid Paper Corporation contends that it has overpaid its federal income taxes in amounts and for taxable periods as follows:

| Fiscal Year Ended | Tax | Interest | Total |
|-------------------|-----|----------|-------|
| April 30, 1973 | $113,051.00 | $31,438.23 | $144,489.23 |
| April 30, 1974 | 144,021.00 | 31,409.39 | 175,430.39 |
| April 30, 1975 | 152,798.00 | 23,962.06 | 176,760.06 |
|                | $409,870.00 | $86,809.68 | $496,679.68 |

> 5. Both defendants have filed *claims* for refund of federal income taxes with the Internal Revenue Service, an agency of the United States, setting forth their respective and *conflicting claims.* Plaintiff is unable to undertake to determine the validity of defendants' respective

*claims* and make disbursement accordingly without subjecting itself to the hazard of multiple liability, and plaintiff should not be compelled to assume such risks in attempting to resolve or decide the claimants' conflicting positions as to the facts or the applicable law. Consequently, *all such claims* have been denied by the United States.

6. Plaintiff, contemporaneously with this petition, tenders into the Registry of the Court the sum of $525,660.77, such sum being the *larger of the aggregate claims* of the competing defendants, inclusive of accrued interest to date. [Emphasis supplied.]

We believe the interpleader petition demonstrates the IRS considered the papers submitted by the decedent to be informal claims for refund for 1973 and 1974. First, the word "claims" in paragraph 5 must be read in light of paragraph 4, where it was stated Bette Graham contended she had overpaid her taxes in three separate years. Second, paragraph 6 speaks of the "larger of the *aggregate* claims." Consideration of both factors suggests that the interpleader petition assumed Bette Graham had asserted claims for 1973 and 1974 as well as 1972. In addition, paragraph 5 speaks of "conflicting claims." There is no question LPC asserted timely refund claims for 1972, 1973, and 1974. For there to be conflicting *claims*, Bette Graham must have made more than the one claim for 1972. Moreover, if decedent had only asserted a claim for 1972, the Government would not have put into the court registry $525,660.77, a sum well in excess of either decedent's claim for 1972 of $99,756.82 plus interest or LPC's claim for 1972 of $144,489.23 plus interest.

The Government, however, argues that the petition in interpleader was made by the Justice Department, not the IRS. We recognize that the knowledge of the Justice Department is not synonymous with the knowledge of the IRS. *Disabled American Veterans v. United States*, 227 Ct.Cl. at ——, 650 F.2d at 1179. There we said:

We, however, reject out of hand the notion expressed by the trial judge that the information garnered by the Justice Department's trial attorney from DAV's pretrial submission constituted knowledge chargeable to the Internal Revenue Service for purposes of section 7422(a). * * * Furthermore, it is abundantly clear that our cases focus not on whether the "Government" * * * has knowledge of the claim but, specifically, on whether the *Internal Revenue Service* has such notice. [*Id.*]

In this case, however, the information reflected in the interpleader petition was not specially obtained by the Justice Department attorneys. The information supporting the petition was already in the IRS files. Further, a copy of the Government's interpleader petition was placed in the IRS files. The IRS was therefore well aware of what was contained in the interpleader petition.

In summary, we find the various papers filed with the IRS, when viewed together, contained sufficient information to put the Commissioner on notice that decedent was asserting her rights with respect to the overpayment of taxes in 1973 and 1974.

II

Having determined decedent made a timely informal refund claim, we must next decide whether plaintiff is entitled to a tax refund for 1973 and 1974. Plaintiff contends collateral estoppel bars the Government from relitigating the merits of plaintiff's refund suit. He states that the same issues present here were fully litigated and decided in Bette Graham's suit in the district court, *Graham v. United States*, 79–1 U.S.T.C. ¶ 9274. The only difference between that suit and this one, plaintiff contends, is that this suit deals with different taxable years. Defendant, however, argues that although collateral estoppel might ordinarily be appropriate, this case presents special equitable problems.[6] Defendant

---

6. In its initial answer and briefs, defendant admitted it was barred by collateral estoppel on

those issues litigated in the district court suit. On October 16, 1981, defendant made a motion

claims these equitable problems should bar the application of collateral estoppel.

■ It is an accepted principle of law that collateral estoppel applies to tax litigation. *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. * * * To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. [Footnote omitted; *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973–974, 59 L.Ed.2d 210 (1979).]

*See also Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Yachts America, Inc. v. United States*, Ct.Cl., 673 F.2d 356 (1982). In the income tax field, each taxable year is considered to be a new cause of action. Collateral estoppel will bar the relitigation of any matters in a second proceeding concerning a second taxable year that were actually presented and determined in the first suit. *Commissioner v. Sunnen*, 333 U.S. at 598, 68 S.Ct. at 719. "Collateral estoppel operates, in other words, to relieve the government and the taxpayer of 'redundant litigation of the identical question of the statute's application to the taxpayer's status.'" *Id.* at 598–599, 68 S.Ct. at 719–720 (quoting *Tait v. Western Md. Ry. Co.*, 289 U.S. 620, 624, 53 S.Ct. 706, 707, 77 L.Ed. 1405 (1933)).

Collateral estoppel will not lie, however, where there has been a subsequent modification of the significant facts or a change in the controlling legal principles. *Id.* 333 U.S. at 599–600, 68 S.Ct. at 720.

In *Graham v. United States, supra*, the district court decided after a full hearing on the matter that the royalty payments received by Bette Graham in 1972 were properly treated as long-term capital gain and not ordinary income. The Government had contended, first, that a sale had not taken place and, second, that if one had section 1239 dictated the treatment of payments as ordinary income.[7] After studying the transfer agreement and the relevant law, the district court found the transfer to be a sale. It next looked to section 1239. Section 1239 provides in pertinent part:

(a) *Treatment of gain as ordinary income.*—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren; any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) *Section applicable only to sales or exchanges of depreciable property.*—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

---

pursuant to Rules 39(a) and 72(d)(5) to file a first amended answer and first amended response to plaintiff's request for admission of facts and genuineness of documents. Defendant requested to amend its answer to say it was not barred by collateral estoppel. It submitted a brief in conjunction with its amended answer. We allow defendant's motion and consider the issues raised by defendant's amended answer and brief.

7. In its 30-day letter, the Government contended that if the payments were properly reported as long-term capital gain, a portion of the payments represented imputed interest under section 483. The Government, however, abandoned this argument prior to the district court trial.

There was no question Bette Graham and LPC were related persons as described in section 1239(a)(2). What was at issue was whether the secret formula was in the hands of LPC "of a character which is subject to the allowance for depreciation provided in section 167." Section 1239(b). The district court heard testimony on this and in a well-reasoned opinion found the secret formula was not depreciable in the hands of LPC. This being so, section 1239 was held to be inapplicable and Bette Graham was entitled to a refund of taxes for 1972.[8]

■ Application of the principles of collateral estoppel we have enunciated bars defendant from relitigation of the sale and section 1239 issues in this court. The only difference between the district court suit and the one in this court is the year in question.[9] There have been no significant modifications in fact or law since the district court decision was rendered. The Government, however, argues that special circumstances are present which would make it inequitable for us to apply collateral estoppel. It contends the presence of the pending LPC suit in this court raises the possibility of inconsistent judgments. LPC has brought a tax refund suit for the fiscal years ended April 30, 1973, through April 30, 1975, claiming entitlement to deductions for the royalty payments made to the Grahams for the secret formula. The Government claims that a finding for LPC would be inconsistent with a holding in this suit that the secret formula is not depreciable. It urges consolidation of the suits for a full trial.

Courts have on rare occasions refused to apply collateral estoppel in special circumstances where they believe such application would result in a manifest injustice to one party. *See, e.g., Amsden v. United States,* 146 Ct.Cl. 809, 175 F.Supp. 147 (1959); *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* No. 79–1460 (D.C.Cir., of Aug. 14, 1981); *Spilker v. Hankin,* 188 F.2d 35 (D.C.Cir. 1951). We do not find that to be the situation here. We have not yet rendered a decision nor even held a trial in the LPC case. There is no certainty we will find the secret formula depreciable in the LPC case. In fact, this court will surely take into consideration the prior decisions dealing with the secret formula and its depreciability.[10] Further, LPC presents several arguments to support its deductions, only one of which is that the formula is depreciable.[11] It is clearly possible this court may find for LPC on a basis having nothing to do with the depreciability of the formula. This court, of course, is also free to find for the Government in the LPC case.

The Government's argument against collateral estoppel is an equitable one. Yet, it is in part the Government's own inconsistent positions that cause its dilemma. The IRS first determined with respect to the Grahams that the secret formula was depreciable and then determined with respect to LPC that the formula was not depreciable. We will not apply an equitable exception to collateral estoppel to benefit the Government, where the Government itself has not acted completely equitably. We therefore

---

8. The Government did not appeal this decision and its time for appeal has now expired. Thus, this is a final decision.

9. The plaintiff as executor of decedent's estate is a party in privity with the decedent. It, therefore, makes no difference that decedent is not the plaintiff in the present suit. *Kaplan v. United States,* 154 F.Supp. 167, 171–172 (W.D. Pa.1954); *Estate of Hill v. Commissioner,* 59 T.C. 846, 851 (1973). *See also Montana v. United States,* 440 U.S. at 153–155, 99 S.Ct. at 973–974; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra.*

10. These decisions include not only the decision rendered in the present action but also *Graham v. United States,* 79–1 U.S.T.C. ¶ 9274, and *Graham v. Commissioner,* 76 T.C. 853.

11. The other arguments presented by LPC in support of its deductions are:

(1) the royalty payments are deductible as an ordinary and necessary business expense under section 162; and

(2) section 446 supports these deductions because the royalty payments are chargeable against current income under generally accepted accounting principles and LPC's own internal bookkeeping methods.

find collateral estoppel bars defendant from litigating the sale and section 1239 issues in the present suit.

### III

■ To support its argument that a full trial should be held, defendant states that the section 483 issue raised in the 30-day letter is not barred by collateral estoppel.[12] We agree the section 483 issue is not barred by collateral estoppel but find defendant has failed to meet its burden of proof with regard to this issue. The section 483 issue was waived prior to the district court litigation on the taxable year 1972. For an issue to be barred from further litigation, it must have been *actually presented and determined* in the first suit. *Commissioner v. Sunnen,* 333 U.S. at 598, 68 S.Ct. at 719. Since the section 483 issue was not determined in the district court suit, defendant is not now barred from raising it in this suit.

Defendant, however, has failed to meet its burden of proof on this issue. Defendant did not raise this issue in its initial answer and brief nor even in its amended answer. This argument is *first presented in the next-to-last paragraph* of the brief filed in conjunction with defendant's amended answer. Defendant just mentions the section 483 argument; it does not give us information with which we might decide the issue. Defendant fails to demonstrate there are factual issues in question warranting a full trial. In both the district court suit and in Robert Graham's Tax Court suit, the Government waived the section 483 issue, apparently finding it not to be meritorious. Defendant has not seriously pursued it here. Our Rule 101(f) provides in pertinent part:

> * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

We therefore find it appropriate to enter summary judgment against defendant on this issue.[13]

### IV

In conclusion, we find first that decedent made a timely informal claim for refund for the taxable years 1973 and 1974. Second, the Government was given a full and fair opportunity to litigate the sale and section 1239 issues in the district court litigation regarding 1972 and is therefore barred from relitigating these issues in the present suit for the years 1973 and 1974. Last, we find defendant failed to meet its burden under Rule 101 with regard to the section 483 issue. Thus, decedent's treatment of the royalty payments received in 1973 and 1974 as long-term capital gain was proper. Plaintiff's motion for summary judgment is hereby granted. Defendant's motion for summary judgment is hereby denied. This case is referred to a trial judge under Rule 131(c) for a determination of the amount of plaintiff's recovery for the taxable years 1973 and 1974.

---

12. Under the Government's section 483 theory, decedent sold the secret formula to LPC and properly reported a portion of the royalty payments as capital gain. The other portion of the royalty payments, however, should have been reported as ordinary income representing imputed interest under section 483.

13. Since we have not reached the merits of the section 483 argument, defendant will not be collaterally estopped from raising this issue in any future litigation concerning years subsequent to 1974.