This tax refund suit comes before us on the Government’s motion for summary judgment. The Government contends plaintiff should be barred from litigating this suit on the basis of the doctrine of collateral estoppel. It argues the facts of this case are the same as the facts of Tulia Feedlot, Inc.v. United States, 513 F. 2d 800 (5th Cir. 1975), cert. denied, 423 U.S. 947 (1975) (hereinafter Tulia I). Plaintiff responds that the facts of the present suit are significantly different from those that were before the Fifth Circuit.
Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. * * * To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent *972 decisions. [Footnote omitted; Montana v. United States, 440 U.S. 147, 153-154 (1979).]
It is well settled that collateral estoppel applies to the field of tax litigation. Commissioner v. Sunnen, 333 U.S. 591 (1948); Furst v. United States, 230 Ct. Cl. 375, 678 F. 2d 147 (1982). In the income tax area, collateral estoppel will bar the relitigation of any matters presented in a proceeding concerning a subsequent taxable year that were actually presented and determined in a suit concerning an earlier taxable year. Sunnen, 333 U.S. at 598; Furst, 230 Ct. Cl. at 385, 678 F. 2d at 154. Collateral estoppel, however, will not bar a suit where there has been a subsequent modification of significant facts or a change in the controlling legal principles. Sunnen, 333 U.S. at 599-600; Furst, 230 Ct. Cl. at 385, 678 F. 2d at 154. We must decide whether the facts before us are the same as those facts that were significant to the Fifth Circuit decision.
In Tulia I the principal shareholders of the Tulia Feedlot Corporation guarantied loans to the corporation in proportion to their stockholdings. During the tax year 1970, Tulia Corporation paid a guarantor fee of 3 percent of the amount guarantied to each shareholder who had guarantied a loan. The Fifth Circuit held that the guarantor fees were in reality equivalent to dividends and that they were not ordinary and necessary business expenses deductible to the corporation. Several factors were critical to the Tulia I decision. First, the principal shareholders guarantied loans to the corporation that were in proportion to their stock-holdings. Second, there was no evidence presented to show how the 3 percent figure was determined. It was not demonstrated that the payment of 3 percent of the guarantied amounts to the shareholders reflected a rational calculation of the risks involved in the guaranties. Third, there was no evidence introduced to show such guaranties were commonly required of closely held corporations in the cattle feedlot business. The court said:
* * * We think that the absence of such evidence, * * *, is dispositive. In the absence of such evidence, the district court could not properly find that the guaranty was an ordinary and necessary business expense because it could not be sufficiently informed as to the economic realities of the transaction. [513 F. 2d at 806.]
*973 In the case before us concerning Tulia’s fiscal years ending August 31, 1976, and 1977, the response to interrogatories and affidavit signed by Robert N. Allen, Executive Vice President of Tuba Feedlot, Inc., states that each shareholder decided what amounts he or she was willing to guaranty; such amounts were not in proportion to the shareholder’s stockholdings. The Government admits not all the shareholders guarantied loan amounts proportional to their stockholdings but says such amounts were sufficiently close as to make coincidence unlikely. The Government’s own chart at page 2 of its reply brief demonstrates that three of the 11 principal shareholders guarantied loan amounts that were not proportional to the amount of stock they held. How the amount of loan guaranties was actually determined is a disputed question of fact that cannot be decided on the record before us. This is a fact that could make this case significantly different from Tuba I.
In addition, the interrogatories and affidavit also state that the corporation looked into alternative means of financing, studied the risks, and found that having the shareholders guaranty the loans for a fee was the best means of financing. This seems to be supported by the corporate minutes. If these alleged facts are proven, they will make this case significantly different from Tuba I where there was a lack of such evidence. It also should be noted that plaintiff attests that in the fiscal years 1974 and 1975, years subsequent to the year considered in the Tuba I decision, guarantor fees were paid even though there was no net profit.
We therefore find there are disputed issues of facts that if proven will make this case significantly different from Tuba I. We hold the doctrine of collateral estoppel is inapplicable at this time.
In the alternative, the Government urges that we grant summary judgment in its favor by application of stare decisis on the basis of two Fifth Circuit decisions, Tulia I, supra, and Olton Feed Yard, Inc. v. United States, 592 F. 2d 272 (5th Cir. 1979). This is but another formulation of the collateral estoppel argument, and it is equally unconvincing.
*974 it is therefore ordered that the defendant’s motion for summary judgment be denied without prejudice.
[On August 9, 1983 the United States Claims Court determined that plaintiff was entitled to recover. On October 18, 1983 the Court entered judgment for plaintiff for $36,059.88 (tax of $11,600.79 and assessed interest of $3,614.62 for fiscal year 1976, and tax of $16,788.61 and assessed interest of $4,055.86 for fiscal year 1977), plus statutory interest thereon.]