**PURITAN LAWN MEMORIAL PARK CEMETERY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 790–87T.**

United States Claims Court.

April 25, 1988.

Devra G. Bailin, Boston, Mass., for plaintiff; Withington, Cross, Park & Groden, of counsel.

William K. Drew, Dept. of Justice, Washington, D.C., with whom was William S. Rose, Jr., Asst. Atty. Gen., for defendant.

**ORDER**

ROBINSON, Judge.

This federal income tax refund suit comes before the Court upon defendant's motion to dismiss for lack of subject matter jurisdiction. The defendant claims that the plaintiff filed its claim for refund after the applicable statute of limitations had run. Two major issues arise: 1) whether plain-

tiff by its actions put the commissioner of the Internal Revenue Service (IRS) on notice that the plaintiff was asserting a right to an overpayment of a tax for 1982, so as to have filed a timely informal claim for that year, and 2) whether there was any concealment by the IRS of the payment of plaintiff's taxes for 1982. After careful consideration, the Court grants defendant's motion to dismiss for lack of subject matter jurisdiction.

### Facts

The plaintiff, Puritan Lawn Memorial Park Cemetery, had its tax exempt status revoked on June 21, 1982. The IRS required the plaintiff to submit a Form 1120 [1] for 1977 and all subsequent years. Plaintiff questioned this decision, so it did not compute any tax due on the Forms 1120 it submitted for the years 1977–81. On February 28, 1983, in order to stop interest running on any deficiencies assessed for 1977–81, the plaintiff filed with the IRS a $120,000 deposit in the form of a cash bond.

On August 1, 1983, plaintiff filed a Form 1120 and a Form 990 [2] for 1982. Also, on August 1, 1983, the IRS assessed the plaintiff's federal income taxes for 1983 to be $9,314.30. The IRS's record of account confirms that the IRS sent notices of deficiency on August 1, 1983, September 5, 1983, and October 3, 1983. However, the plaintiff contends it never received any of these notices. On October 20, 1983, the IRS transferred $12,000 from plaintiff's income tax account for 1978 to plaintiff's income tax account for 1982.

On June 22, 1984, plaintiff instructed the IRS to apply its deposit to any tax deficiencies assessed against it for 1977–81. At the same time the plaintiff filed formal claims for refund for 1977–81. On November 12, 1984, the IRS refunded $3,173.37 to the plaintiff with respect to plaintiff's 1982 federal income taxes. This amount included $2,685.70 for overpayment and $451.67 for interest due to the plaintiff. The refund check issued to the plaintiff contained the notations "F–1120 REF" and "12–82." The check was also accompanied by an explanation of the overpayment of the account.

The plaintiff brought an action against the United States on March 21, 1985, in this Court for a declaratory judgment that it is tax exempt and for a refund of taxes paid for 1977–81. (Docket No. 154–85T, Puritan I). On October 3, 1986, Judge Seto granted leave to amend the complaint, in accordance with RUSCC 15, which calls for the liberal granting of such motions. Plaintiff's amendment added 1982 to its refund claims for 1977–81. This Court, on September 3, 1987, granted defendant's motion to dismiss the claim for 1982 because the plaintiff had not yet filed a refund claim with IRS.

The plaintiff then filed on October 9, 1987, a claim for refund for 1982 with the IRS. After the IRS denied plaintiff's claim for refund on October 23, 1987, plaintiff instituted this second action. (Docket No. 790–87T, Puritan II.) Defendant now moves to dismiss because plaintiff failed to file a timely claim for refund. Plaintiff concedes that its claim was not within either of the two possible dates for the statute of limitations. However, plaintiff claims that though no timely formal claim for refund was made, a timely informal claim for refund was made. Plaintiff further contends that it was concealment by the defendant which caused it to miss the statute of limitations for the formal refund claim. It is these contentions the Court shall now address.[3]

---

1. U.S. corporation income tax return.

2. Tax return for tax exempt organizations.

3. Plaintiff asserts additionally that defendant's motion to dismiss should be considered a motion for summary judgment because the motion is supported by matters outside the pleadings. This is incorrect. A motion to dismiss for lack of subject matter jurisdiction may be supported by matters outside the pleadings. RUSCC 12(b). Further, a motion to dismiss and not a motion for summary judgment is proper where lack of jurisdiction is alleged, because summary judgment is a ruling on the merits of a case and cannot be entered where a court lacks subject matter jurisdiction. *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 883–84 (Fed.Cir. 1985).

## Discussion

It is necessary to file a claim for refund with the commissioner of the IRS before a suit for tax refund may be filed in any Court. 26 U.S.C. Section 7422(a) [4]. The refund claim must be made within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever is later. 26 U.S.C. Section 6511(a).[5] If a timely formal claim for refund is not made, the taxpayer may still be able to maintain a refund suit if a timely informal claim is made. An informal claim serves the same purpose as a formal claim; therefore, it must put the commissioner on notice that a right is being asserted to the overpayment of a tax. *Newton v. United States*, 143 Ct.Cl. 293, 163 F.Supp. 614 (1958). This enables the IRS, if it wishes, to begin an examination of the claim. *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963). Only when the facts and circumstances demonstrate that the commissioner was on notice that a right was being asserted to the overpayment of a tax will a court hold a timely informal claim has been filed. *Furst v. United States*, 230 Ct.Cl. 375, 678 F.2d 147 (1982). Further, cases have generally held that there should be a written component to the informal claim. *Id.* 678 F.2d at 151, citing *Disabled American Veterans v. United States*, 227 Ct.Cl. 474, 477, 650 F.2d 1178, 1180 (1981). This is in recognition of the fact that government personnel working on the case may change. *Wrightsman Petroleum Co. v. United States*, 92 Ct.Cl. 217, 238, 35 F.Supp. 86 (1940), *cert. denied*, 313 U.S. 578, 61 S.Ct. 1095, 85 L.Ed. 1535 (1941). Beyond the requirement for a written component, the inquiry remains whether the facts and circumstances illustrate that the commissioner was put on notice that a right concerning overpayment of a tax was being asserted. The plaintiff, relying on *Furst*, 678 F.2d 147,[6] contends that by virtue of its 1982 Form 1120, its 1982 Form 990, and by its request for refund of the $120,000 deposit in 1984, the "defendant knew that Puritan continued to assert its entitlement to tax exempt status" and "that the plaintiff sought refund of the full amount of the $120,000 deposit—no matter how the IRS applied or misapplied it." Plaintiff's memorandum in opposition to defendant's motion to dismiss the complaint, at 6.

*Furst* is clearly distinguishable from the facts here, and even more, illustrates why no informal claim for refund may be found in this case. In *Furst*, the issue was the failure to treat royalties as capital gains in 1973 and 1974, and the resulting tax deficiencies in those years. The Court determined that, although no formal claim for refund was made, the commissioner was put on notice that the plaintiff was asserting specifically rights to the overpayment of taxes for 1973 and 1974. In *Furst*, not only was it readily apparent to the commissioner from the many circumstances that the treatment of royalties was at issue, but a protest letter directly stating objections to the tax deficiencies for 1973 and 1974 made it apparent that the plaintiff was

---

**4.** *Section 7422. Civil actions for refund. (a) No suit prior to filing claim for refund.*—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

**5.** *Section 6511. Limitations on credit or refund. (a) Period of limitation on filing claim.*—Claim for credit or refund on an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

**6.** A case where the Court held the facts and circumstances indicated an informal claim was made.

asserting a right to an overpayment of a tax for those years.

■ Here the plaintiff attempts to show notice by virtue of the fact that it filed a Form 990, the tax return for tax exempt organizations, coupled with the fact that it requested the balance of its $120,000 deposit. Even conceding plaintiff's argument that the IRS was aware that entitlement to tax exempt status was a reoccurring issue, notice of this fact is not sufficient to show the plaintiff was asserting a right to the overpayment of a tax for 1982. Since the Form 990 was filed much before the tax for 1982 was even assessed, it is difficult to understand how its filing could have put the IRS on notice as to the overpayment of taxes for 1982. Further, the fact that the plaintiff sought refund of the deposit in no way could have put the commissioner on notice that plaintiff was asserting overpayment of taxes for 1982. Actually, treatment of this deposit is a separate issue which is not before this Court at this time.

In *Furst*, the protest letter provided actual notice that the refund of taxes for specific years was at issue. Here, while tax exempt status may have been at issue, never did the plaintiff claim in any way that it had overpaid its taxes in 1982.

This result comports with public policy and the realities of our tax system. The IRS, with its massive workload, can hardly be charged with the duty of putting together the pieces of only marginally-related facts to determine that the taxpayer is asserting a right to an overpayment of a tax. This burden must be on the taxpayer, and the incentive of forfeited tax dollars should be more than enough to ensure the overpayment is brought home by the taxpayer to the IRS.

The plaintiff does not allege enough facts and circumstances to show the commissioner was put on appropriate notice of its claim for 1982. Availability of information is not equivalent to notice that a claim is asserted based on that information. The claim must somehow be communicated to the IRS. *Union Pacific R.R. Co. v. United States*, 182 Ct.Cl. 103, 113, 389 F.2d 437, 445 (1968). Here, although the commissioner may have been aware that entitlement to the tax exempt status was a reoccurring issue, the fact that the plaintiff felt its taxes were overpaid in 1982 was never communicated to the commissioner; therefore, no informal claim may be found.

■ Plaintiff cites various cases for the proposition that equity dictates that a statute of limitations should not begin to run when a party either has a duty to disclose information or when they fraudulently or deliberately conceal information, until the plaintiff discovers or by reasonable diligence could have discovered the basis for the lawsuit. However, plaintiff has presented no evidence that the defendant fraudulently or deliberately concealed any information from plaintiff regarding the 1982 tax year. Furthermore, this Court is constrained to find that plaintiff obtained notice on November 12, 1984, that its taxes were paid for 1982. This date is when plaintiff was sent its refund check for 1982, which was later received and promptly cashed by the plaintiff. It is irrelevant that the plaintiff did not know at that time which funds paid the tax because the only issue here is overpayment of taxes for 1982. Under these circumstances, the Court sees no way the plaintiff can credibly claim that they first became aware of the payment in 1986. Therefore, the Court holds that the latest possible date until which the statute of limitations could have run was November 12, 1986, two years after the IRS sent plaintiff a refund check for 1982 taxes.

*Conclusion*

Plaintiff concedes that no formal claim for refund was made within the required statute of limitations. Further, this Court finds that the awareness, by the commissioner, that the plaintiff contested its tax exempt status coupled with plaintiff's demands for refund of the $120,000 deposit was not sufficient to put the commissioner on notice that the plaintiff was asserting a right with respect to overpayment of a tax for 1982. Therefore, the Court finds that plaintiff has not made even an informal refund claim. In addition, plaintiff has

made no showing that the government concealed the plaintiff's payment of taxes. Thus, the statute of limitations is not tolled. Since plaintiff has not filed a timely request for refund pursuant to 26 U.S.C. Section 6511 and 26 U.S.C. Section 7422, this Court lacks jurisdiction over plaintiff's claim. Defendant's motion to dismiss for lack of subject matter jurisdiction is hereby granted. The Clerk is directed to dismiss the complaint. No costs.