**APG 3, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ.A. H–97–3055.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 3, 1998.

Harold Norman May, Keiser & May, Houston, TX, for APG 3 Inc., plaintiff.

Andrew L. Sobotka, Dept of Justice, Tax Division, Dallas, TX, for United States of America, defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

LAKE, District Judge.

The Court has reviewed the Magistrate Judge's Memorandum and Recommendation and the objections thereto, and is of the opinion that said Memorandum and Recommendation should be adopted by this Court.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Memorandum and Recommendation is hereby adopted by this Court.

The Clerk shall send copies of this Order to the respective parties.

## MEMORANDUM AND RECOMMENDATION

JOHNSON, United States Magistrate Judge.

Before the court[1] is the following motion: United States' Motion to Dismiss with Prejudice/ Alternative Motion for Summary Judgment; and Brief.[2] The court has considered the motion, Plaintiff's response and the applicable law. For the reasons set forth below, the court RECOMMENDS that the government's motion be GRANTED.

### I. Case Background

Plaintiff APG 3, Inc. is a Texas corporation. In 1991, Plaintiff made a number of payroll and withholding tax payments to the Internal Revenue Service (IRS) to satisfy its obligation for that year. The payments allegedly totaled approximately $1.5 million dollars. APG 3 now claims the payments were made in error because it did not actually employ the persons for whom the payments were intended to cover. Plaintiff thus believes it is entitled to a refund and has filed the present tax refund suit. The government moves for summary judgment on the grounds that because Plaintiff did not properly file a claim for a refund with the IRS prior to commencing this action, this court lacks jurisdiction to hear Plaintiff's claim. The government also asserts the doctrine of variance as a basis for summary judgment.

### II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); FED.R.CIV.P. 56(c). Applicable substantive law determines what factual issues are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

While the party moving for summary judgment must show that there is not a genuine issue of material fact, they need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party does not meet its initial burden, the motion must be denied, irrespective of the nonmovant's response. *Id.* If, however, the moving party comes forward with evidence which would

---

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and FED. R.CIV.P. 72.

2. Docket Entry Number (DEN) 10.

support summary judgment, the nonmovant must then make a showing of evidence which establishes that there is a genuine issue of material fact. *Id.*

Rule 56(c) sets forth the types of evidence which may be considered when reviewing a motion for summary judgment. This evidence includes pleadings, depositions, answers to interrogatories, admissions on file and affidavits.

Evidence used by the nonmoving party to avoid summary judgement need not be in a form which would be admissible at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, Rule 56(e) does require that affidavits opposing summary judgment be based on personal knowledge and provide facts which would be admissible in evidence. Facts contained in affidavits which would not be admissible in evidence must be excluded from consideration for summary judgment purposes. Additionally, unsubstantiated beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994).

When considering the evidence submitted by both the movant and the nonmovant, the court must draw reasonable inferences from the underlying facts in favor of the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. All doubt as to the existence of a genuine issue of material fact must also be resolved in favor of the nonmovant. *Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 996–97 (5th Cir.1979).

### III. Analysis

■ In order to bring a tax refund suit in federal court, a taxpayer must first file a refund claim with the IRS. 26 U.S.C. § 7422(a).[3] Failure to file for a refund with the IRS deprives a court of subject matter jurisdiction. *Zernial v. United States,* 714 F.2d 431, 434 (5th Cir.1983). To be considered timely, the refund claim must be made: (1) within 3 years from the time the return was filed or (2) within 2 years from the time the tax was paid, whichever period is later. 26 U.S.C. § 6511(a).[4] The parties agree that the 3–year rule applies here. Three separate Employer's Quarterly Tax Returns, designated as Form 941, were filed by Plaintiff in 1991. Because no return was required to be filed until April 15, 1992, the effective filing date for all the returns is deemed by law to be April 15, 1992. 26 U.S.C. § 6513(c)(1).[5] Three years from the date the return was filed was therefore April 15, 1995. Accordingly, Plaintiff had until April 15, 1995 to file for a refund.

Normally, a taxpayer files a formal claim for a refund prepared in compliance with applicable treasury regulations. *Furst v. United States,* 230 Ct.Cl. 375, 678 F.2d 147, 151 (Ct.Cl.1982). To receive a refund for an alleged overpayment of employment taxes, treasury regulations require a taxpayer to file a Form 843. Treas.Reg. § 301.6402–2(c).[6] In other words, a Form 843 is used to allege errors contained in a previously filed 941 Form. It is undisputed that Plaintiff did not file a Form 843 within the requisite time period. In fact, Plaintiff has never filed the appropriate form with the IRS. It would therefore appear that this court lacks jurisdiction and is precluded from hearing this claim.

---

**3.** "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

**4.** "Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from

the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later...."

**5.** "If a return for any period ending with or within a calender year is filed before April 15 of the succeeding calender year, such return shall be considered filed on April 15 of such succeeding calender year...."

**6.** "Except for claims filed after June 30, 1976 for the refunding of overpayment of income taxes, all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843."

█ APG 3, however, argues that jurisdiction exists because it filed a timely informal claim for a refund. Informal claims are recognized as valid under § 7422(a) in limited circumstances. *Missouri Pacific R.R. Co. v. United States,* 558 F.2d 596, 598–99 (Ct.Cl. 1977). The question before the court therefore becomes whether or not this is such a circumstance.

The Fifth Circuit sets forth the following criteria for determining the legitimacy of an informal claim:

An informal written claim is sufficient if it puts the Commissioner of Internal Revenue on notice that the taxpayer believes an erroneous tax has been assessed and desires a refund for certain years.... It is not sufficient that the Internal Revenue Service has information somewhere in its possession from which it might deduce that the taxpayer is entitled to a refund, nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer.

Nevertheless, there are no hard and fast rules for evaluating the sufficiency of an informal claim, and each case must be decided on its own particular set of facts with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made.

*Gustin v. United States,* 876 F.2d 485, 488–89 (5th Cir.1989) (citation and internal quotation marks omitted).

█ Despite the flexibility afforded by this standard, there is one absolute requirement that must be met for an informal claim to be deemed valid; specifically, the claim must have a written component. *Missouri Pacific,* 558 F.2d at 598. In an effort to satisfy this requirement, Plaintiff directs the court's

attention to a letter he sent to the IRS on March 17, 1995, a few weeks before the 3–year deadline passed. The letter reads:

Dear Ms. Walsh,

Please consider this a formal request to abate the penalty assessed against APG3, Inc. for failure to provide W–2 Forms for tax year 1991 as documentation for 941 funds incorrectly deposited by APG3 Inc. FID Number 76–0236162 (formally known as Flex–Staff, Inc.)

All employees of the former were transferred to RTAC of Delaware (FID 76–0339651) who assumed the responsibility for 941 funding and reporting. Accordingly a Joint Transfer of Experience Rate was prepared and filed by that firm. RTAC issued W2 forms to all employee [sic] under the FID 76–0339651. Samples of those W2 [sic] issued to employees of Flex-Staff Division of RTAC of Delaware are enclosed for your review.

I have included my prior correspondence to the IRS per your request. I hope the enclosed information will allow you to close this file. Thank you for your assistance. Please send any refunds due because of overpayment by the former Flex–Staff, Inc. (FID 76–0236162) to APG3, Inc. at the above address.

Sincerely

APG3, Inc.

/s/ Arthur P. Grider

President [7]

This is the only written documentation touching on the subject of refunds that was submitted to the IRS within the 3–year time limit.[8]

█ An informal claim for a refund will, of course, never be as obvious as a formal claim submitted on the correct 843 Form; nonetheless, the informal claim is still re-

---

7. Attached as Exhibit C–1 to Plaintiff's Response; DEN 12.

8. Plaintiff did submit additional written documentation to the IRS outside the 3–year period. In June of 1995, APG 3 filed three 941 Forms with the IRS. The forms requested that APG 3 be refunded for each of the three allegedly erroneous 941 Forms that were originally filed in 1991. But as the government points out, and as is explained above, Plaintiff should have filed a

Form 843 in order to request a refund based on an alleged error in a 941 filing. More importantly though, these three supplemental 941 forms were filed after April 15, 1995. This is outside the limitations period. The court is constrained from considering events which occurred outside the limitations period to be part of Plaintiff's informal request. What matters is what the IRS knew within the limitations period, not what it knew after the deadline passed.

quired to "be clear and explicit in alerting the Commissioner that a refund of taxes is sought for certain years." *Missouri Pacific,* 558 F.2d at 598. The letter sent by Plaintiff simply does not meet that standard. The letter is clearly focused on a dispute over penalties incurred by APG 3 for failure to submit W2 Forms to the IRS (a matter which Plaintiff has made no effort to explain to the court). Only twice does the letter refer to the issue of refunds: (1) a passing reference to "941 funds incorrectly deposited by APG3" and (2) a blanket request to "[p]lease send any refunds due because of overpayment." The court finds that these two comments are simply too opaque and unspecified to be considered even an informal demand for a refund of $ 1.5 million from the IRS. Nowhere in the letter does it even state how much money to which APG 3 believed it was entitled. It does not state when the erroneous deposits were made and whether it was one mistaken deposit or several. Most critically, outside of labeling the payments as "incorrect," the letter does not set forth a theory by which APG 3 is entitled to a refund. "A claim is not a proper refund claim unless it sets forth *in detail* each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis for the claim." *Young v. United States,* 609 F.Supp. 512, 516 (N.D.Tex.1985) (emphasis added). One cannot seriously expect the IRS to be on notice that Plaintiff had a claim for $1.5 million dollars based on this letter.

It is true that the letter sent by Plaintiff cannot be considered in isolation; rather "[t]he written component must be examined ... in light of all the facts and circumstances." *Furst,* 678 F.2d at 151. Only after considering all the relevant factual underpinnings that indicate knowledge on the part of the IRS, and not just the one writing, can the court determine whether a timely informal claim for refund was filed. *Id.* In the instant case, however, this mandate does not alter the court's analysis because Plaintiff has sub-

mitted no evidence explaining what the surrounding circumstances were. While the letter mentions the disputed W–2 penalty and refers to prior correspondence with the IRS, no other correspondence, documentation, deposition testimony or affidavit testimony has been submitted explaining the W–2 situation. Further explanation of the W–2 controversy and what the IRS knew about it would clarify whether the IRS was aware that Plaintiff was seeking a refund of overpaid 941 taxes. Because the government has conclusively shown there was no formal notice, it is Plaintiff's burden as non-movant to adduce evidence showing there is a fact issue on whether informal notice was given. *Little,* 37 F.3d at 1075; *See also Disabled American Veterans v. United States,* 227 Ct.Cl. 474, 650 F.2d 1178, 1179 (Ct.Cl.1981) (the burden rests upon the taxpayer to demonstrate that the information constituting the basis for the claim was communicated to the IRS).

■ The only evidence besides the letter which possibly suggests the IRS was on notice that Plaintiff was demanding a refund is the following statement contained in the affidavit of Arthur Grider, APG 3's president:

> Within 8 or 9 days of sending the March 17, 1995 letter to the I.R.S. I had a telephone conversation with an I.R.S. agent from the I.R.S. Service Center in Austin, Texas regarding my request for a refund. The agent told me that she was too busy to review my request and that she would send it on up.[9]

While the phone call was allegedly made within the statutory 3–year period, this averment does not alter the court's decision that the IRS did not have notice. No averment is made that any details were provided to the IRS agent concerning the case and the name of the IRS agent is not even known. The problem with this type of oral "notice" is that it ignores the fact that different IRS employees work on the same case and they can only be expected to be aware of what appears in the file. *Disabled American Veterans,* 650 F.2d at 1180. It is simply not reasonable to

---

**9.** Affidavit of Arthur P. Grider, attached as Exhibit C to Plaintiff's Response; DEN 12. Grider's affidavit also reports other conversation with the IRS and relates that an APG 3 attorney spoke to the IRS about the matter. No date is

given for when these conversations took place. Since the conversations may have taken place outside the three-year limitation period the court may not consider them as evidence.

think that an unrecorded, undocumented phone call in combination with a nebulous letter constitutes adequate notice. After all, the court is still unclear as to why Plaintiff believes it is entitled to a refund, outside of its quite general claim that it paid the taxes "by mistake." If the court cannot ascertain the specific basis for the refund claim after Plaintiff has had months to brief the issue, it can hardly be expected that the IRS would be aware of the nature of Plaintiff's claim based on a couple of phrases in a letter and a phone call. The court therefore finds that the March 17, 1995, letter and the surrounding circumstances were not sufficient to put the IRS on notice that a refund was being claimed concerning the overpayment of a tax. *Furst,* 678 F.2d at 151. Consequently, this court lacks jurisdiction to decide whether the refund should have been granted.

## IV. Conclusion

For the foregoing reasons the court **RECOMMENDS** that the government's motion for summary judgement be **GRANTED.** To the extent that Plaintiff believes evidence exists, beyond what has already been considered by the court, indicating that the IRS had notice of its claim for a refund, it may raise that issue in its objections to this recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten (10) days from receipt to file written objections pursuant to General Order 80–5. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc).

The original of any written objection shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208. Copies of such objections shall be mailed to opposing counsel and to the chambers of the undersigned, Suite 7019, 515 Rusk, Houston, Texas 77002.

November 6, 1998.