**AMERICAN STEAM CONVEYOR CORPO-
RATION v. UNITED STATES.**
Nos. L–131, L–176.

Court of Claims.
April 8, 1935.

J. Nelson Anderson and Stanley Worth, both of Washington, D. C., for plaintiff.

J. W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

These two cases are submitted together upon the same findings of fact. In No. L–131 the suit is brought to recover taxes alleged to have been illegally collected by credit after collection was barred, and the petition sets up three alternative causes of action, namely, (a) a suit for the recovery of 1917 taxes alleged to have been so collected, (b) a suit based upon an alleged implied contract of the defendant to refund the amount of an overpayment of taxes, and (c) a suit for the recovery of 1918 income and profits taxes.

No. L–176 is a suit for the payment of interest alleged to have been erroneously withheld in connection with the refund of $13,431.91 taxes for the year 1918.

The case No. L–131 will be considered first.

It appears that the Commissioner made a revision of plaintiff's tax liability for the years 1917 and 1918 by which an additional tax of $5,164.97 was determined for 1917 and an overassessment of $18,709.46 for 1918, or a net overassessment for the two years of $13,544.49. Plaintiff was advised of the revisions by a letter dated January 7, 1924, and on receipt of the letter wrote the Commissioner on February 7, 1924, as follows:

"We have your statement showing amount due from American Steam Conveyor Corporation for years 1919 and 20 based on the results of the adjustment of tax for year 1918, which we find correct.

"Will you deduct this amount from the rebate amounting to $13,544.49 as per your letter of January 7, file no. IT:CA:MS–2505 —AMM–APP and send your draft for the balance, or how do you want the matter handled."

The first paragraph of this letter refers to some statement which plaintiff had received from the Commissioner with reference to the amount due on taxes for 1919 and 1920 as a result of adjustment of tax for the year 1918. This statement is not found in the evidence probably for the reason that there being no dispute as to the taxes of 1919 and 1920 it does not seem to be material. The second paragraph of the letter is incomplete and almost unintelligible, but it refers to the letter of January 7 and the overassessment shown thereby on the taxes of 1918. This much is clear: The difficulty arises in determining what is referred to by the words, "will you deduct this amount * * * and send your draft for the balance." This can only be ascertained by considering what the evidence shows with reference to the situation of the parties. We think plaintiff must have meant the additional tax for 1917 which is also set out in the letter of January 7, 1924, as this is the only way in which sense can be made of the letter. So read it amounts to a request that defendant should, after deducting the amount of the additional assessment for 1917 from the overassessment for 1918, send a "draft for the balance." The subsequent events, as set out in the findings, show that it was so understood by both parties. On February 18, 1924, the Commissioner as-

sessed the additional tax for 1917 as proposed in his letter of January 7, and instructed the collector to "Withhold demand pending comparison with schedule of over-assessment (form 7805) no. 8656" on taxes of 1918. On February 20, 1924, the Commissioner wrote the plaintiff as follows: "Reference is made to your letter dated February 7, 1924, in which you request information as to the manner of making payment of the additional tax as indicated by office letter dated February 4, 1924," and further stated that the collector "will advise you" with reference to this matter. February 26, 1924, the Commissioner signed a schedule of overassessments which was sent to the collector for the purpose of the examination of plaintiff's tax account. Thereafter, on April 2, 1924, the collector signed a schedule of refunds and credits showing the overassessment, that $5,164.97 of the overpayment for 1918 should be credited to the additional tax liability for 1917, and that a net amount was refundable to plaintiff for 1918 of $13,544.49. This schedule of refunds and credits was signed by the Commissioner May 10, 1924, and forwarded to the Comptroller General for examination prior to the issuance of a check for the amount refundable of $13,544.49. May 22, 1924, the Comptroller General returned the schedule for elimination of the refund in favor of plaintiff and the rescheduling of it to him for direct settlement on account of indebtedness due from plaintiff to the United States on matters other than taxes. After the plaintiff had been advised of the action of the Comptroller General and that an indebtedness of $112.58 to the government should be satisfied before the balance could be refunded, plaintiff, on September 24, 1924, wrote the Comptroller General requesting that he deduct the amount of this indebtedness of $112.58 "from the amount of $13,544.49, which is due us and voucher for payment the balance." On October 14, 1924, the Comptroller General advised plaintiff that this had been done and on October 22, 1924, $13,431.91 was paid to the plaintiff without any interest being allowed thereon.

Here we have a case where the plaintiff not only does not object to the tax account first presented to it by the Commissioner, but also when the Comptroller General makes an offset against the balance originally shown to be due plaintiff it appears that plaintiff requests that the offset be deducted from the amount originally shown to be due from the defendant and that the balance be remitted. Payment was accordingly made by defendant and plaintiff made no objection to the amount thereof until about three and a half years afterwards when on May 2, 1928, it filed a claim for refund of $5,-164.97 which was the amount of the additional tax for 1917 which had been deducted in fixing the balance due plaintiff.

This court has in numerous cases laid down rules applicable to the circumstances of the instant case which would prevent any recovery therein. Counsel for plaintiff insists that this long line of decisions is erroneous but many of them have been considered and expressly affirmed by the Supreme Court and in all of the others certiorari has been denied. We think there is no necessity for reviewing by further discussion the principles laid down therein. Counsel for plaintiff evidently has a very different theory as to what constitutes an account stated and an account settled from that which is enunciated in the prior decisions of this court to which we have referred.

Some misunderstanding has arisen with reference to the rules laid down in these cases because in most of them the question was not merely whether there was an account stated but whether there was an account stated *in favor of plaintiff*. The situation in the instant case was similar to that in the case of R. H. Stearns Co. v. United States, 291 U. S. 54, 54 S. Ct. 325, 329, 78 L. Ed. 647, in which the Supreme Court said: "In the absence of an account stated in its favor the petitioner must fail." By the opinions of the Supreme Court in the case of Daube v. United States, 289 U. S. 367, 53 S. Ct. 597, 77 L. Ed. 1261, and the Stearns Case, the rule has become settled that in cases where an account is presented showing a balance struck there must be an agreement either express or implied from the actions of the parties that the balance is correct, or no account has been stated; and where the party to whom the account is presented disputes the correctness of the balance he cannot select one item in his favor and, bringing suit upon that, claim the benefit of an account stated which is what plaintiff is trying to do in the case now before us. Moreover, there is still another reason why plaintiff cannot prevail.

The rule stated above was amplified by the Supreme Court in the Stearns Co. Case, supra, in which facts similar to those appearing in the case at bar were held to establish an account settled. Counsel for plaintiff contends that the Stearns Co. Case is not applicable for the reason that the ac-

count submitted therein showed a balance due the Government which the plaintiff paid, and that in the instant case the account showed a balance due the plaintiff which was paid by the defendant. But as we pointed out in First National Bank of Beaver Falls v. United States, 8 F. Supp. 484, 79 Ct. Cl. 744, it makes no difference which one of the parties to the account is shown thereby to owe the balance which has been struck. If the balance is paid by the party against whom it is stated, it then becomes an account settled. In the Stearns Case, supra, the case of Lockwood v. Thorne, 18 N. Y. 285, was cited as an authority for holding that the payment of the balance on the account presented made it an account settled. In that case the balance was paid by the party presenting the account, as it was in the case at bar. Even if there had been no request that the credit be made, the account having been submitted and payment made of the balance shown, the acceptance of the payment would have established an account settled.

What we have said above is sufficient to dispose of case L–131 in which recovery is sought by reason of the credit made from the overpayment for the year 1918 upon the taxes of 1917 but, in our opinion, there are several other reasons why the plaintiff cannot recover.

■ On May 6, 1928, plaintiff filed a claim for refund of the taxes of 1917 and now contends that under the provisions of section 609 of the Revenue Act of 1928 (26 USCA § 2609) the overpayment upon the 1918 taxes was changed by this credit to an overpayment on the 1917 taxes. We have held to the contrary in Rosenstadt & Waller v. United States, 7 F. Supp. 287, 79 Ct. Cl. 698. We also held in the case last cited that the limitations on the time for commencing an action to recover taxes laid down in section 3228 of the Revised Statutes (as amended, 26 USCA § 157) were not repealed by the act of 1928 and in the case of Hearn & Son .v. United States, 8 F. Supp. 698, 80 Ct. Cl. —, certiorari denied, we held, that section 3226 of the Revised Statutes (as amended, 26 USCA § 156) had not been repealed by the act of 1928. Plaintiff's action insofar as it is based on an overpayment of the 1918 tax is therefore barred, and there was no overpayment of the 1917 tax.

It follows from what we have said above that case L–131 must be dismissed and it is so ordered.

## No. L–176.

Plaintiff's claim for interest in case L–176 consists of two separate items. Its first claim is that it is entitled to interest from December 5, 1923, to May 10, 1924, on the amount of $13,431.91 which was allowed as a refund for 1918. The interest so claimed amounts to $483.25.

The parties agree that so far as this portion of the claim is concerned it is controlled by the interest provisions of the Revenue Act of 1921 which, so far as applicable to the case before us, allow interest only for a period beginning six months after a claim for refund was filed. It is therefore necessary to determine, so far as this item is concerned, the time when a claim for refund was filed.

■ No formal claim for refund was filed until February 21, 1924, and the refund of $13,431.91 was paid without interest on October 22, 1924. This formal claim does not appear to have been forwarded by the collector to the Commissioner until May 4, 1928, but article 1031 (a) contained in the regulations promulgated by the Treasury with reference to the act of 1921, giving directions with reference to the manner of proceeding to obtain a refund, directs that the application shall be filed in the office of the collector. The statute (Revenue Act 1921, § 1318, 26 USCA § 156) requires that a claim for refund be filed with the Commissioner "according to the provisions of law in that regard and the regulations of the Secretary." The formal claim having been filed with the collector in accordance with the regulations, we think that was a sufficient filing. The Commissioner signed the schedule of refunds and credits and allowed the claim on May 10, 1924, which was less than three months after the formal claim was filed. The plaintiff, however, claims that a statement dated June 2, 1923, and filed shortly thereafter, constituted an informal claim for refund and that the formal claim filed February 21, 1924, was an amendment thereto and consequently it should be allowed interest from six months after June 5, 1923. In other words, that interest should begin to run December 5, 1923.

It is a fair inference from the letter of the Commissioner dated January 7, 1924, that the Commissioner considered the statement of June 2, 1923, although the final assessment was subsequently upon the basis of an office audit. But the statement merely took exceptions to the findings made by an internal revenue agent which were assumed

to be the basis of the proposed additional assessment for the years 1917 and 1918 and set out at length data and calculations to the effect that the correct taxable income for 1917 was $30,673.67, and for 1918, $16,285.97. Nothing whatever was contained in the statement which in any way referred to a refund. In fact there had been no final assessment or determination by the Commissioner of the amount of plaintiff's taxes for 1918. The statement was filed by plaintiff in order that it might be considered in arriving at a final determination and could serve no other purpose. It therefore could not be considered as an informal claim for refund even if it were conceded, as plaintiff claims, that it set out facts which upon the final determination of the tax showed grounds for a reduction in its tax liability. The formal claim that was later filed therefore can not be considered as dating back to the time when this statement was presented to the Commissioner. As the refund was allowed within six months from the time any claim for refund was filed the plaintiff is not entitled to recover on the first item of its claim for interest.

On the second division of its claim for interest plaintiff has a better standing. We have uniformly held that the provisions of the act of 1875 (31 USCA § 227) are applicable to an overpayment of taxes duly allowed by the Commissioner of Internal Revenue and thereafter withheld by the Comptroller General. See American Potash Co. v. United States, 8 F. Supp. 717, 80 Ct. Cl. ——. We find nothing in the case which takes it out from under the provisions of this statute allowing interest on the overpayment from the time it was allowed until paid. It is urged in argument on behalf of the defendant that the Comptroller General acted within a reasonable time. For the purposes of the argument this may be conceded although the government's claim was a specific and liquidated one. But the plaintiff was deprived of the use of a sum of money which, at all times after the allowance of the claim, was admitted to be due and owing to it. It is only fair and just that it should receive compensation therefor and if the act be construed not to provide for compensation under such circumstances it becomes of little benefit to the parties which the act was intended to relieve. We think that under a reasonable construction of the act the plaintiff is entitled to recover interest on the amount withheld from the time the refund was allowed up to the time it was

paid. The check made in payment of the refund was dated October 22, 1924. Presumably it was delivered shortly thereafter, but the precise date does not appear in the evidence. Computing interest to the date last mentioned, we find the amount due the plaintiff is $362.66, for which sum it will be awarded judgment.

BOOTH, Chief Justice, and WILLIAMS and WHALEY, Judges, concur.

LITTLETON, Judge, dissents.