**NEW ENGLAND ELECTRIC SYSTEM and subsidiary companies,**

v.

**The UNITED STATES.**

**No. 90–3976T.**

United States Court of Federal Claims.

Jan. 24, 1995.

---

**49.** The same consideration should be extended to the purchase price of the awning.

F. Brook Voght, Washington, DC, for plaintiffs. J. Bradford Anwyll, and John L. Palmer, of counsel.

Jennifer Dover Spriggs, Washington, DC, with whom was Asst. Atty. Gen. Loretta C. Argrett, for defendant. David Gustafson, of counsel.

## OPINION

YOCK, Judge.

In this federal tax refund suit, the plaintiff, New England Electric System and Subsidiary Companies, seeks a refund of some $815,073 plus statutory interest. The sub-

stantive legal issues controlling this case were determined by this Court in *New England Elec. Sys. v. United States,* 28 Fed.Cl. 720 (1993). In that opinion, the Court held that a fish ladder, constructed as part of the Vernon Dam, qualified for an investment tax credit.

Since the parties were unable to stipulate to the amount of refund due the plaintiff, a trial was held to resolve this issue. The Government, in the damages phase of this tax refund action, now asserts that the plaintiff is not entitled to a full federal income tax refund of $815,073 because it did not file a timely, formal administrative claim for a refund pursuant to I.R.C. § 6511 (1988).[1] The Government concedes that the plaintiff is entitled to a refund of $285,031, plus statutory interest, because the taxpayer had paid this amount within the required statutory two-year time period. However, the Government contends that the plaintiff did not file a satisfactory informal claim in order to allow recovery of the full refund amount. The plaintiff counters that it is entitled to the full refund because it filed a timely and adequate informal claim which was later perfected by a formal claim.

For the foregoing reasons, the Court finds that the plaintiff is entitled to a full refund of $815,073.

### Facts

The New England Power Company ("NEP"), a controlled subsidiary of the New England Electric System ("NEES") and a member of its consolidated group, operates three hydroelectric dams on the Connecticut River: the Vernon Dam, the Bellows Falls Dam, and the Wilder Dam. During the taxable years at issue, NEP and NEES filed a consolidated return on the calendar year basis.

This case arises from a series of tax audits of NEES's and NEP's consolidated returns for the tax years 1979 through 1985 conducted by the Internal Revenue Service (the "IRS") from 1983 through 1989. The operative tax years, for the purposes of this case, are 1980 and 1981. The plaintiff made estimated tax payments throughout the 1980 tax year that were deemed paid on March 15, 1981. For the tax year 1981, the plaintiff made estimated tax payments throughout the year which were deemed paid on March 15, 1982. Consolidated returns for these years were filed on May 13, 1981, and June 15, 1982, respectively.

The pertinent audits were conducted for the years 1979 through 1981 by Revenue Agent Thomas Mason ("Mason") from February 1983 through November 30, 1984. Mason later conducted audits for the tax years 1982 and 1983 from March 1986 through July 1987. Finally, the audit of the tax years 1984 and 1985, which were only partially completed by Mr. Mason, were conducted in January 1989. At all pertinent times, Mr. John L. Palmer ("Palmer"), the Assistant Treasurer of NEP, oversaw the tax audits on behalf of NEP.

In 1981, the plaintiff had taken an investment tax credit ("ITC") for a fish ladder constructed at the Vernon Dam and attempted to apply the ITC as a carryback to the 1980 tax year. During the audit of the 1980–1981 tax years, in approximately June of 1984, Mr. Mason first proposed to disallow the ITC for the Vernon Dam fish ladder. In response, Mr. Palmer "prepared arguments" to Mr. Mason positing that the entire Vernon Dam fish ladder was eligible for the ITC. In the alternative, Mr. Palmer also argued that certain portions of the fish ladder, which constituted tangible personal property were eligible for the ITC. Mr. Mason and Mr. Palmer frequently exchanged legal memoranda on the issue of whether the Vernon Dam fish ladder qualified for an ITC. In

---

1. 26 U.S.C. § 6511 (1988), provides in pertinent part:

"(a) Period of limitation on filing claim

"Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the

time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid."

addition, on many occasions, Mr. Mason and Mr. Palmer orally discussed the fish ladder and Palmer's position on why it was eligible for an ITC.

Mr. Mason orally agreed to allow the ITC only with respect to that part of the Vernon Dam fish ladder which was deemed tangible personal property. The effect of that concession was to reduce the claimed ITC to $815,073 from $952,880. Consequently, Mr. Mason issued a Form 5701 "Notice of Proposed Adjustment" on July 30, 1984, proposing to disallow the ITC with respect to the remainder of the Vernon Dam fish ladder. After first placing an "x" in the box designated "agreed in part," Mr. Palmer returned the Form 5701 to Mr. Mason. Mr. Palmer added a signed annotation to this Form 5701 which stated: "Do not agree to fish ladder ITC. Everything else is agreed to." At that time, Mr. Palmer also orally notified Mr. Mason that NEES would pay the tax solely to close the case but would later file a refund claim.

On July 30, 1984, the IRS also prepared an engineering valuation report which concluded that the Vernon Dam fish ladder did not qualify for an ITC. Mr. Palmer and Mr. Mason then met in October of 1984. During the meeting, Mr. Palmer emphasized again that the plaintiff disagreed with the disallowance of the remainder of the ITC with respect to the Vernon Dam fish ladder. Mr. Palmer orally informed Mr. Mason that the plaintiff "agree[d] to take the disallowances on the investment credit but that * * * [we were] going to * * * file a refund claim and ask for * * * [the] money back after * * * [Mason's] report * * * [was] finalized and the case [was] processed." Transcript at 51. Mr. Palmer also requested that Mr. Mason include in his final revenue report a statement that NEES would file a refund claim for the ITC with respect to the Vernon Dam fish ladder.

In November of 1984, as the audit was culminating, the IRS requested an extension of the statute of limitations to assess any federal income tax due for the 1979, 1980, and 1981 tax years until June 30, 1986. Consequently, the IRS forwarded a Form 872 "Consent to Extend Time to Assess Tax" which extended the period for which the IRS could assess federal income tax for the 1979–1981 tax years to June 30, 1986. It also had the concomitant effect of extending the time for filing formal refund claims to January 1, 1987. *See* 26 U.S.C. § 6511(c)(1) (1988).[2]

Mr. Mason completed his audit of the plaintiff's 1979 through 1981 tax years on November 30, 1984, and he filed a revenue agent's report (RAR) which found a deficiency for the 1980 tax year of $285,031. The deficiency of $285,031 for the 1980 tax year was attributable to the disallowance of the $815,031 ITC from 1981 which the plaintiff had intended to carry back to the 1980 tax year. Importantly, Mason noted on the RAR that NEES "reserves the right to file a protective claim relating to the disallowance of the investment tax credit for the 'fish ladder.'"

In addition to the RAR, the IRS furnished the plaintiff with two Form 870's entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." The first Form 870 stated that the plaintiff had an increase in tax for the 1978, 1979, and 1980 tax years of $38,731, $2,898,261, and $285,031, respectively. The Form 870 contains the language: "[i]f you later file a claim and the Service disallows it, you may file suit for refund in a district court or in the United States Court of Claims, but you may not file a petition with the United States Tax Court." Mr. Alfred Houston, the Treasurer of NEES, signed and dated the forms on November 23, 1984, on behalf of the plaintiff. Mr. Houston made no other notations on the forms. The

---

**2.** "(c) Special rules applicable in case of extension of time by agreement

"If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund—

"(1) Time for filing claim

"The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4)."

IRS received both forms on November 30, 1984.

The RAR was subsequently forwarded to the Joint Committee on Taxation which reviewed the report. On June 12, 1985, a bill for the tax deficiencies for the 1979–1980 tax years was forwarded to the plaintiff. After taking into account various adjustments, the total assessed deficiencies for the 1978, 1979, and 1980 tax years were $12,607.81, $5,521,397.91, and $430,225.48, respectively. The plaintiff paid these deficiencies on July 8, 1985.

In March of 1986, the audit of the plaintiff's 1982 and 1983 tax years commenced. At the pre-audit conference, Mr. Palmer provided Mr. Mason with copies of the plaintiff's annual reports which discussed the fish ladders of the Vernon, the Bellows Falls, and the Wilder dams. During this meeting, Mr. Palmer continued to object to the disallowance of the ITC for the Vernon Dam fish ladder. Mr. Mason, in turn, queried whether the plaintiff had filed refund claims with respect to the disallowed ITC on the Vernon Dam fish ladder. Mr. Palmer testified that he responded that "as soon as we filed them with [the] Service we'd give him a copy." Transcript at 111. Mr. Mason testified at trial that, at this time, he "knew there was a claim pending but * * * didn't know if it was filed or not filed." Transcript at 128.

On July 11, 1986, Mr. Mason requested of the IRS that an engineer assist in his audit of the 1982 and 1983 tax years. Mr. McNaught ("McNaught"), an engineering specialist, was assigned to assist Mr. Mason. In June of 1987, Mr. McNaught drafted an engineer's valuation report in which he noted:

The Bellows Falls Vt. Hydroelectric Station is the next up stream dam on the Connecticut River * * *. In previous audits, this issue[ ] was reviewed and a determination was made that approximately 80% of the Q.P.E. costs were not eligible for investment tax credit * * *. The taxpayer is in disagreement with this determination of ineligible items. The position of the taxpayer is that the fish ladder is an integral part of both the technical activity and the trade or business of furnishing electrical energy.

On a transmittal form dated June 2, 1987, accompanying the report, Mr. McNaught wrote that "T/P has informed R/A that it intends to litigate the I.T.C. issue of the fish ladder."

On June 15, 1987, the plaintiff filed a Form 1120X, "Amended U.S. Corporation Income Tax Return," for the 1980 and 1981 tax years. This Form 1120X claimed a refund for the 1980 tax year of $815,073 based on the disallowance of the ITC for the Vernon Dam fish ladder which it had carried back from the 1981 tax year.[3] This form served as the plaintiff's *formal* claim for a refund. Palmer and Mason both believed at the time that this formal claim was timely as it was filed within two years of when the plaintiff had paid the asserted tax deficiency on July 8, 1985. After receiving the Form 1120X, Mason completed a supplemental report dated July 30, 1987, which reexamined the plaintiff's 1979, 1980, and 1981 tax years. In this report, Mason noted that "[a]n adjustment was made in 1981 to disallow the investment tax credit in the amount of $7,220,192 (tax basis). Taxpayer agreed to the adjustment but reserved the right to file a protective refund claim."

On November 30, 1987, the IRS disallowed the plaintiff's request for a refund of $815,073 for the 1980 tax year as requested per the Form 1120X. A revised version of Mason's RAR of July 30, 1987, was attached to the notice disallowing the refund. The revised RAR stated that:

[a]n adjustment was made in 1981 to disallow investment tax credit in the amount of $7,220,192 (tax basis). Taxpayer agreed to the adjustment but reserved the right to file a protective refund claim. Furthermore, if the taxpayer is able to sustain its position with respect to the investment tax credit issue, the amount of refund allowable is $285,031 which is the deficiency paid for 1980.

3. As earlier indicated, the Government has conceded that the plaintiff is entitled to $285,031 (plus statutory interest) because it had paid this amount on July 8, 1985, and the formal claim had been filed on June 15, 1987, within two years of that payment.

Upon receiving the notice of disallowance, the plaintiff requested a hearing with the Office of Regional Director Appeals. The parties, however, never reached an agreement concerning the qualification of the Vernon Dam fish ladder for the ITC. Of note, however, at this juncture, the issue of whether or not the plaintiff had filed a refund claim within the applicable statute of limitations had never been addressed. On November 30, 1990, the plaintiff filed its complaint in this Court alleging that the Vernon Dam fish ladder qualified for an ITC, and, accordingly, that the plaintiff was entitled to a refund. The Government denied that the Vernon Dam fish ladder qualified for the ITC and further argued, for the first time, that the plaintiff did not file a timely, formal administrative claim for a refund.

The parties agreed to a bifurcated procedure on these two issues. On June 22, 1993, this Court held a hearing to rule on the parties' cross-motions for summary judgment on the liability issue of whether the Vernon Dam fish ladder qualified for the ITC. On August 3, 1993, this Court held that the fish ladder on the Vernon Dam did so qualify. *New England Elec. Sys. v. United States*, 28 Fed.Cl. 720 (1993).

On July 1, 1994, a trial was held to determine the amount that the plaintiff is entitled to recover as a refund.

### Discussion

To begin with, several matters should be restated and reemphasized. First, the Form 1120X, filed by the plaintiff on June 15, 1987, is the *only* formal claim submitted by the plaintiff. Treas.Reg. § 301.6402–3. Second, the only payments made by the plaintiff that relate to the disallowance of the ITC were made on July 8, 1985, in the amount of $285,031. Also, the statute of limitations for a tax refund claim requires that a taxpayer file a claim within three years from the time the return was filed or within two years of payment of the disputed tax, whichever is later. 26 U.S.C. § 6511(a) (1988). As a result, and the Government concedes this point, the plaintiff *has* made a timely formal claim under the two-year rule with respect to the $285,031 deficiency paid on July 8, 1985.

However, the Form 872, which extended the time for assessing tax to June 30, 1986, concomitantly provided the plaintiff with a window of six months from June 30, 1986, to January 1, 1987, to file a timely *formal* claim for the *entire* sum which was disallowed as an ITC. 26 U.S.C. § 6511(c)(1) (1988). Thus, the plaintiff could recover the full amount of the disallowed ITC, but only if the plaintiff filed an appropriate refund claim by January 1, 1987. The only issue still in contention between the parties is whether or not, prior to January 1, 1987, an *informal* claim was made by the plaintiff, which would allow the plaintiff to recover the full amount of the disallowed ITC.

Informal claims have long been recognized as valid claims. *See United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941); *Furst v. United States*, 230 Ct.Cl. 375, 678 F.2d 147 (1982). *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 318 F.2d 915 (1963). There are three components to an informal claim. First, an informal claim must provide the Commissioner of the IRS with notice that the taxpayer is asserting a right to a refund. Second, the claim must describe the legal and factual basis for the refund. Finally, an informal claim must have some written component. *American Radiator*, 162 Ct.Cl. at 113–14, 318 F.2d at 920. An informal claim, however, requires a court to go beyond the written component and examine the facts and circumstances which are presented in every case. *Furst*, 230 Ct.Cl. at 380–81, 678 F.2d at 151 ("It is all the facts and circumstances that will determine whether a timely informal claim for refund has been filed."); *American Radiator*, 162 Ct.Cl. at 114, 318 F.2d at 920 ("The focus is on the claim as a whole, not merely the written component."); *Newton v. United States*, 143 Ct.Cl. 293, 300, 163 F.Supp. 614, 619 (1958). As such, no set rules can be elucidated as to what constitutes an adequate informal claim; rather, each case must be determined based on its own unique set of facts. Of primary importance, however, is the existence of *some* written component. While courts have varied on the degree of detail required for a writing to adequately constitute an informal claim, all

courts agree that some written component is required.

The plaintiff has proffered to the Court three documents which it believes satisfy the written component requirement of its informal claim, and which, pursuant to the above analysis, may properly be considered as written components. They are as follows:

(1) a Form 5701 dated July 1984 stating "[d]o not agree to fish ladder ITC. Everything else is agreed to" and signed by Mr. Palmer;

(2) Mason's RAR dated November 30, 1984, stating "T/P reserves the right to file a protective claim relating to the disallowance of the investment tax credit;"

(3) an IRS transmittal report for the tax years 1979–1981 dated November 30, 1984, stating "[t]axpayer accepted the engineer's findings except for the 'fish ladder' that the taxpayer may file a protective claim."

The latter two of these documents were created by Agent Mason while the first notation was created by the plaintiff. Further, all of the writings were submitted prior to the assessment of the tax on June 12, 1985. The Government questions whether these writings can be considered part of an informal claim for two reasons. First, the Government contends that statements made before a tax is assessed cannot properly be considered as part of a claim for a refund. Second, the Government posits that oral communications documented by IRS personnel cannot be considered as part of a taxpayer's written component in an informal claim situation.

▆▆ The Government first argues that since the written components proffered by the plaintiff were created before the tax was formally assessed, the writings are not and cannot be a part of an informal claim for a refund. The argument is based on the premise that since the tax had not been assessed, a refund claim was not yet in order. As authority for this assertion, the Government cites to *American Steam Conveyor Corp. v. United States*, 81 Ct.Cl. 151, 10 F.Supp. 571 (1935) and *Arch Eng'g Co. v. United States*, 783 F.2d 190 (Fed.Cir.1986). However, on close examination, both of these cases seem to have been decided more on the basis of the *nature* of the proffered written compo-

nents than on whether the writings were created before the tax was formally assessed. In neither case could the written components be construed as requests for refunds, and the fact that the tax had not yet been assessed in both instances merely exacerbated the absence of a demand for a refund. For instance, in *American Steam Conveyor*, the court opined:

> [n]othing whatever was contained in the statement which in any way referred to a refund. In fact there had been no final assessment or determination by the Commissioner of the amount of plaintiff's taxes for 1918. The statement was filed by plaintiff in order that it might be considered in arriving at a final determination and could serve no other purpose.

*Id.* 81 Ct.Cl. at 163, 10 F.Supp. at 577. This Court disagrees, then, that either case stands for the proposition that all writings submitted before a tax is assessed cannot be considered as part of an informal claim. The Court interprets these holdings in light of the facts of those particular cases. Both courts noted that the purposes for which the writings were submitted is what prompted their conclusions. Both courts stated that the writings were proffered in order to come to a decision with respect to the proposed tax assessment, and, as such, could not be considered claims for a refund. This Court does agree that writings which were not intended as part of a claim, but merely to resolve the dispute between the IRS and the taxpayer, should not be considered written components for the purposes of an informal claim.

That is not the case in this instance, however. The writings submitted here were filed to establish a present right to a refund at some future time. Mason had resolved to disallow the ITC by the time the plaintiff notated the Form 5701. As such, the Court believes that *American Steam Conveyor and Arch Engineering* were based on specific facts which are inapposite to those presented in the case at bar. As stated in *Newton:*

> [n]o hard and fast rules can be applied * * *. Necessarily each case must be decided on its own peculiar set if facts with a view towards determining whether under those facts the Commissioner knew, or

should have known, that a claim was being made.

*Newton v. United States,* 143 Ct.Cl. 293, 300, 163 F.Supp. 614, 619 (1958). The Court believes that under the specific facts presented in this instance, as discussed *infra,* the IRS could construe the plaintiff's written components as a claim to a right to a future refund.

Moreover, the Court believes that the sweeping premise that all writings submitted before a tax is formally assessed cannot be considered as part of an informal claim is incorrect and conflicts with established case law. An informal claim develops through a course of conduct which consists of various elements, both written and oral. The written component and the elements divined through other methods, such as an audit, are simply different elements of one informal claim. In addition, *American Radiator* clearly held that information gained during an audit—in other words, *before a tax is assessed*—could be included as part of a taxpayer's informal claim. *American Radiator,* 162 Ct.Cl. at 115, 318 F.2d at 921 ("[P]laintiff can properly rely on the very specific knowledge gained by the revenue agent in auditing [the plaintiff's] returns."); *see also Furst v. United States,* 230 Ct.Cl. 375, 380, 678 F.2d 147, 151 (1982) (noting that the "written component alone need not provide the entire framework for the informal refund claim. It is all the facts and circumstances * * *."). To bifurcate the informal claim and allow some elements of the claim to be submitted before the assessment of the tax and the written component only after formal assessment, is simply nonsensical.[4] The Trial Division of the United States Court of Claims came to this same conclusion in *Faria Corp. v. United States,* 77–1 USTC ¶ 16,251 at 87,326 (Tr.Div.Ct.Cl. 1977). The leading treatise on tax concurs with this result as well:

> [s]tatements submitted to the Service as part of the audit do not necessarily consti-

tute a claim for refund * * *. However, the statements can constitute a claim if they meet the requirements, including a written statement requesting a refund.

MERTENS, LAW OF FEDERAL INCOME TAXATION § 58.31, at 51–52 (1994). Accordingly, simply because the written component of the plaintiff's informal claim was submitted prior to formal assessment of the tax, does not mean that the plaintiff's informal claim should be defeated. Rather, the proper analysis should focus on whether or not in the context of a particular case, a writing can be construed as a claim of a right to a refund or is simply a part of the administrative process to determine the taxpayer's tax liability. In this instance, the former is the only reasonable construction of the plaintiff's written components.

With respect to writings created by IRS personnel, indeed, there is case law which does conclude that oral claims alone are insufficient. *See Sicanoff Vegetable Oil Corp. v. United States,* 149 Ct.Cl. 278, 286, 181 F.Supp. 265, 269 (1960); *Disabled American Veterans v. United States,* 227 Ct.Cl. 474, 476, 650 F.2d 1178, 1179–80 (1981). However, when oral statements of a taxpayer are documented in written form by IRS personnel, the cases suggest that the requirement of a written component is satisfied. *See, e.g., Newton v. United States,* 143 Ct.Cl. 293, 301, 163 F.Supp. 614, 619 (1958) (Indicating that the court considered an IRS memo as part of informal claim); *Pinckes v. United States,* 7 Cl.Ct. 570, 571 (1985) ("*[U]ndocumented* oral statements are insufficient.") (emphasis added). In *Faria Corp. v. United States,* 77–1 USTC ¶ 16,251 at 87,-317 (Tr.Div.Ct.Cl.1977), the Trial Division of the Court of Claims noted that:

> [s]ince the written component requirement is to insure that the IRS has some memorandum which it can file, it need not be a writing created by the taxpayer, but may

---

4. There are other decisions which indicate that an informal claim is simply different in character than a formal claim, and, as such, the usual procedures relating to when a claim for refund can be submitted do not apply. *See Newton v. United States,* 143 Ct.Cl. 293, 163 F.Supp. 614 (1958) (Written protest prior to paying tax adequate informal claim); *Crenshaw v. Hrcka,* 237 F.2d 372, 373 (4th Cir.1956) ("[T]he fact that [the informal claim] was given when the plan was agreed upon and not after payment of the taxes * * * especially in view of the fact that the internal revenue agent in charge agreed to retain the letter in the records for association with any claim that might subsequently be filed.").

be an internal IRS memorandum recording what the taxpayer stated he intended to do.

*Id.* at 87,325. While *Faria* is not precedent for this Court, its logic and assessment of the law are compelling, and this Court agrees with its conclusion. As has been stated numerous times, the primary purpose of the written component of an informal claim is in recognition of the fact that Government personnel are constantly changing, and, as such, some continuity of notice must be provided. *Furst v. United States,* 230 Ct.Cl. 375, 380, 678 F.2d 147, 151 (1982). This Court believes that written statements made either by the taxpayer himself or by IRS personnel serve this purpose.[5] In both instances, the purpose of putting future IRS personnel on notice of a claimed right by the taxpayer is served.

As such, all three documents may properly be considered the written components of the plaintiff's informal claim. The next step, however, is to inquire whether these writings pass muster as *adequate* written components for an informal claim.

 The Government argues that the plaintiff's informal claim is inadequate because the written components submitted by the plaintiff do not specifically request a refund of a sum certain, do not describe the tax years for which the refund is requested, and contain no description of the legal basis for the claim. The Government, however, misstates the law when it posits that the written component alone must contain all of these elements. While the informal claim, as a whole, must elicit these notice requirements, the written component alone does not necessarily have to be the source. *Furst,* 230 Ct.Cl. at 380–81, 678 F.2d at 151 ("One written component alone need not provide the entire framework for the informal refund claim."); *American Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963) ("In addition to the writing *and* some form of request

for a refund * * *.") (emphasis added); *Faria Corp.,* 77–1 USTC at 87,325; *see also United States v. Commercial Nat'l Bank of Peoria,* 874 F.2d 1165, 1171 (7th Cir.1989) ("[A] claim's written component alone need not bear the burden of satisfying the notice requirements."). Rather, elements such as the sum of the refund, the years involved, and the like may be provided through oral communications and other writings. At a minimum, however, the written component must be "sufficient to be regarded as an assertion by the taxpayer that he believes the tax has been overpaid." *Newport Indus. v. United States,* 104 Ct.Cl. 38, 45, 60 F.Supp. 229, 232 (1945).

 Pursuant to this analysis, the Court finds that the writings proffered by the plaintiff are *adequate* written components. The written component should not be considered in a vacuum. Its adequacy must be determined in light of the particular facts and circumstances of the case at issue. As was stated in *American Radiator:*

> the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component.

*American Radiator,* 162 Ct.Cl. at 114, 318 F.2d at 920. Moreover, the "formality or specificity" required of a taxpayer's written component is reduced when the actual knowledge obtained by a revenue agent during an audit is detailed. *National Newark & Essex Bank v. United States,* 187 Ct.Cl. 609, 618, 410 F.2d 789, 795 (1969).

The writings "[d]o not agree to fish ladder ITC. Everything else is agreed to" noted on the Form 5701 and signed by Palmer, and the notations by Mason and other IRS personnel stating that the plaintiff planned to litigate the issue of whether the fish ladder was eligible for the ITC, are particularly telling when considered in the context of the circumstances at the time. The testimony

---

5. Interestingly, the United States Court of Appeals for the Federal Circuit seems to concur with this assessment; however, it was expressed in an unpublished opinion, and, as such, cannot be cited as authority by this Court. *See Mobil*

*Oil Corp. v. United States,* 1993 WL 76238, *5, 1993 U.S.App. LEXIS 5581, *16 (Fed.Cir. March 18, 1993) (determining that there must "exist[] some sort of written component, whether created by the taxpayer or the IRS.").

indicated that in the preceding months, Palmer and Mason had numerous discussions concerning the Vernon Dam fish ladder and Palmer's complete disagreement with Mason's conclusions pertaining to this issue. There were numerous statements by Palmer explaining that if Mason insisted on disallowing the ITC for the Vernon Dam fish ladder, the plaintiff would file a claim for a refund. Throughout the audit period, Palmer's position with respect to the Vernon Dam fish ladder was consistent and unyielding—the plaintiff disagreed with Mason's assessment and expected a refund if Mason insisted on disallowing the ITC. Finally, Palmer agreed to sign the Form 5701 only to close the case. In addition, Palmer insisted that Mason note that the plaintiff was not foregoing its right to a refund by signing the form.

In this context, the notation made by Palmer on the Form 5701 clearly had the import of asserting a present right to a refund at some future time. The Form 5701, to which Palmer was asked to consent, was a culmination of months of haggling and discussions over the ITC claimed with respect to the Vernon Dam. When Mason submitted the Form 5701, the form acted as an acknowledgement that Mason had affirmatively determined that, despite Palmer's protestations, Mason would not agree that the Vernon Dam fish ladder qualified for an ITC, and, accordingly, the plaintiff was being assessed a deficiency. In conjunction with writings indicating an intent to litigate this issue, it was clear that by disagreeing with Mason's assessment, the natural result would be a claim to a right to a refund. Also clearly, the *amount* of the refund and the reasons were very specific and well understood by Mr. Mason and the IRS.

This Court's interpretation of the plaintiff's written component comports with numerous decisions with facts analogous to those at issue. For instance, in *Cumberland Portland Cement Co. v. United States,* 122 Ct.Cl. 580, 104 F.Supp. 1010 (1952), in executing a Form 874 "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," the taxpayer included a transmittal letter. The letter stated that "it is very desirable that a prompt

settlement be made in this matter of overassessment * * *." *Id.* 122 Ct.Cl. at 589, 104 F.Supp. at 1014. In *Night Hawk Leasing Co. v. United States,* 84 Ct.Cl. 596, 18 F.Supp. 938 (1937), the Court of Claims held that a notation on the back of a check remitted to the IRS that "[t]his check is accepted as paid under protest pending final decision of the higher courts" was adequate to constitute an informal claim. Finally, the Trial Division of the Court of Claims in *Faria Corp. v. United States,* 77-1 USTC ¶ 16,251 at 87,317 (Tr.Div.Ct.Cl.1977) found that a letter which stated that "the taxes for this period were, and are, being contested" was an adequate written component.

The Court believes that the written components in the above decisions, which were deemed adequate by those respective courts, are analogous to the writings at issue in this case. Moreover, none of the facts in these decisions so explicitly provided a context which assuredly made it known that the IRS' assessments were contested and a refund was desired.

Admittedly, if the plaintiff's entire informal claim consisted of the proffered written components, the claim would be inadequate. However, a taxpayer's informal claim is comprised of more than the written component. A court must examine the facts and circumstances to discern whether the total mix of the written component and the particular facts indicate that the IRS knew or should have known that the taxpayer was asserting a right to a refund. *Furst v. United States,* 230 Ct.Cl. 375, 380–81, 678 F.2d 147, 151 (1982); *American Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 115, 318 F.2d 915, 921 (1963); *Wall Indus., Inc. v. United States,* 10 Cl.Ct. 82, 93 (1986). As was stated in *American Radiator,* for an informal complaint, the taxpayer "can properly rely on the very specific knowledge gained by the revenue agent in auditing its returns * * *." *American Radiator,* 162 Ct.Cl. at 115, 318 F.2d at 921.

The facts and circumstances in this instance are analogous to both *American Radiator* and *Wall Industries*—two cases in which the respective courts found that the taxpayers had submitted adequate informal

claims. Similar to those cases, the plaintiff here was involved in a protracted audit, and the revenue agent obtained "very specific knowledge" of the taxpayer's refund claim during its course. In the case at bar, Agent Mason performed the audit for the operative years for over one and a half years. All told, Mason was involved with the plaintiff for a series of audits covering a number of tax years. During this time, Mason was involved with the plaintiff's tax returns from the time of the first audit in February of 1983 until the tax was formally assessed·on June 12, 1985, to the time the statute of limitations ran on the plaintiff's claim on January 1, 1987—over four years. During this time, Mason was at the plaintiff's place of business on an almost constant basis. Moreover, from the time that Mason first proposed disallowing the ITC for the Vernon Dam fish ladder to the time a formal complaint was actually submitted, Palmer had consistently taken the position that the fish ladder was eligible for an ITC. Throughout this time, Palmer and Mason discussed the legal and factual basis for Palmer's position, often through the exchange of written memorandum. Also, Mason was told in precise terms that Palmer was signing the Form 5701 simply to expedite the case and that the plaintiff reserved its right to seek a refund. These facts and circumstances, to which a court is compelled to inquire when judging an informal claim, oblige one conclusion—the IRS, through Mr. Mason, came to know every element required by the plaintiff to make a claim for a refund. Mason knew the exact year for which the refund was claimed. It is clear that through the audit, Mason came to know not only the factual, but the legal basis, for the plaintiff's claim to a refund. Finally, Mason knew the exact sum of the claimed refund as it had been an issue of discussion for many months, and the sum was included in the amounts to which the plaintiff was asked to consent in the Form 5701.

Other facts compel the conclusion that the IRS was adequately apprised of the plaintiff's claim. First, Mr. Mason admitted that he believed that a claim by the plaintiff for a refund was pending, although he was unsure whether it had been formally filed. Mason also testified that he was aware throughout the audit that the plaintiff contested his conclusions pertaining to the Vernon Dam fish ladder. This is ample evidence that the IRS knew of the plaintiff's claim and its nature. *Wall Indus., Inc. v. United States,* 10 Cl.Ct. 82, 101 (1986). Second, the Government repeatedly has emphasized the fact that because Mason asked the plaintiffs for a copy of their claim and whether or not a formal claim had been filed indicates that Mason did not believe that an informal claim was pending. The court in *American Radiator* noted that the revenue agent in that case also expected that the taxpayer would eventually file a formal claim and that he would consider it. *American Radiator,* 162 Ct.Cl. at 116, 318 F.2d at 921. From this, that court came to the conclusion, contrary to what the Government now argues, that "[t]here can therefore be no doubt that * * * a responsible employee of the Internal Revenue Service had 'notice fairly advising the Commissioner of the nature of the taxpayer's claim.'" *Id.*

Finally, any gaps or ambiguities in the plaintiff's informal claim were cured when a formal claim was filed, even though it was filed after the running of the statute of limitations. The court in *American Radiator* specifically held that

> "[a]n informal claim which is partially informative may be treated as valid even though 'too general' or suffering from a 'lack of specificity—at least where those defects have been remedied by a formal claim *filed after the lapse of the statutory period* * * *.'"

*American Radiator,* 162 Ct.Cl. at 117, 318 F.2d at 921 (emphasis added). As such, even if a court were to conclude that the plaintiff's informal claim is too indeterminate, this Court believes that any ambiguities were corrected when the plaintiff filed a formal claim on June 15, 1987.

It is beyond dispute that from the time that Mr. Mason first proposed to disallow the ITC with respect to the Vernon Dam fish ladder, he knew that the plaintiff disagreed with that assessment, that the plaintiff expected a refund, why the plaintiff expected a refund, and the exact sum for which the plaintiff desired a refund. The statute of

limitations is important because it prevents the assertion of stale claims which are difficult to determine because of the passage of time. However, the evidence amply indicates that there was no threat of this occurring in the case at bar. Mason testified that he expected to consider the plaintiff's claim and that he believed a claim was pending. Mason's audit was extensive, and over its long course, he became thoroughly familiar with the legal and factual basis of the plaintiff's claim, through numerous discussions and the exchange of legal memoranda. As was stated in *Newton*:

> [h]owever, where the Commissioner has had notice from the very beginning of the taxpayer's claim to a refund of tax predicated on specific facts the very purpose of a limitations period has been served.

*Newton v. United States,* 143 Ct.Cl. 293, 299, 163 F.Supp. 614, 618 (1958), citing to *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933). The informal claim doctrine was developed for precisely this instance when the entire basis of the plaintiff's refund claim was within the knowledge of the IRS from the very beginning. Any other result in this case would relegate IRS rules into "traps for the unwary" not procedures established "for the convenience of government officials in passing upon claims for refund and in preparing for trial." *Tucker v. Alexander,* 275 U.S. 228, 231, 48 S.Ct. 45, 46, 72 L.Ed. 253 (1927).

The plaintiff in this case has satisfied the legal and factual requirements for the filing of a timely and adequate informal claim.

## CONCLUSION

For the foregoing reasons, this Court finds that the plaintiff has satisfied the factual and legal requirements necessary to establish a timely and adequate informal claim. As such, the plaintiff shall recover the full refund of $815,073 plus statutory interest.

Accordingly, the clerk of the Court is directed to enter judgment for the plaintiff.